## In re INDUSTRIAL POLLUTION CONTROL, INC., Debtor.

## The HUNTINGTON NATIONAL BANK, Plaintiff,

### v.

## INDUSTRIAL POLLUTION CONTROL, INC., Defendant.

### Bankruptcy No. 91–3352–BM.
### Motion No. 91–8921M.

United States Bankruptcy Court, W.D. Pennsylvania.

March 6, 1992.

Paul R. Yagelski, Robert O. Lampl, Pittsburgh, Pa., for debtor.

William J. Stavole, Diana M. Thimmig, Arter & Hadden, Cleveland, Ohio, for Huntington Nat. Bank.

Mary Reitmeyer, Pittsburgh, Pa., for Unsecured Creditors' Committee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a motion by Huntington National Bank ("Huntington") to dismiss or, in the alternative, to transfer the above-captioned bankruptcy case and adversary proceeding to the district court for the Northern District of Ohio. Huntington argues that venue of the cases is improper because Industrial Pollution Control Inc.'s ("debtor's") principal place of business was not located within this district during the 180–day period immediately prior to commencement of the bankruptcy case or for a longer portion of said 180–day period than in any other district. Huntington maintains that transfer of both cases to the Northern District of Ohio would be more convenient for the parties.[1]

Debtor opposes the motions and claims that venue is proper in this district because it had its principal place of business within this district for a longer portion of the 180–day period immediately prior to the filing of the bankruptcy petition than in any other district.

The Committee of Unsecured Creditors opposes the motion and denies that transfer of these matters would be in the best interest of either creditors or debtor.

For the reasons hereinafter set forth, we find that debtor-in-possession had no one principal place of business for the entire 180–day period prior to this filing. We also find that debtor-in-possession managed and transacted its corporate business within this district for a longer portion of said time frame than in any other district and, accordingly, that venue is proper in this district.

## I

## FACTS

A voluntary chapter 11 petition was filed in this court on September 18, 1991. The petition alleges that debtor's principal place of business or its principal assets had been located within the Western District of Pennsylvania during the 180–day period immediately preceding the filing of the bankruptcy petition or for a longer portion thereof than in any other district.

Debtor was incorporated in Ohio in 1979. It is a service contractor that performs clean-up work involving pollution, and waste materials for private industries and public authorities. Its present address is listed in the petition as:

Route 119 South

Blacklick, Pennsylvania

Debtor declared in its statement of financial affairs attached to the petition that its former address was:

955 Eastlawn Drive

Highland Heights, Ohio

Lawrence Plants, debtor's President and sole shareholder, has resided at the Highland Heights address for the past several years.

Debtor has had several contracts during the past seventeen (17) years with Pennsylvania Electric Company ("PENELEC") to perform dredging or vacuuming work for PENELEC at various sites located in this district.

During the 180–day period prior to bankruptcy, debtor had performed work for customers in Ohio, Georgia, New York, Pennsylvania, and Tennessee.

Between March and July of 1991, debtor did dredging work for PENELEC in this district. Some of debtor's equipment and

---

1. Huntington represented to the court at hearing on its motions that it did *not* seek to have these matters dismissed due to improper venue, nor did it desire that the case be transferred to any district other than the Northern District of Ohio, wherein Huntington conducts its business.

some of its employees were present in this district during that time.

On July 12, 1991, debtor executed a contract with PENELEC to provide vacuuming services at six (6) PENELEC sites located in this district. Debtor began performing under the contract immediately thereafter and, at the insistence of PENELEC, promptly dispatched an officer of the corporation to supervise debtor's operations, employees, and equipment.

Debtor signed a lease shortly after July 12, 1991 for an office located in Blacklick, Pennsylvania, out of which its operations were to be conducted. The office at the location was opened on August 9, 1991. Debtor's operations were conducted prior to that date out of a motel office in Blacklick.

The majority of debtor's employees and equipment had been located in Georgia prior to July 12, 1991, with the remainder located in Ohio, New York, Pennsylvania, and Tennessee.

All of debtor's financial dealings and the vast majority of its operations, employees, and equipment were relocated to this district after July 12, 1991. Except for that equipment already located in this district and a few pieces of equipment located in Ohio, all of the equipment required to do the vacuuming work was brought in from Georgia. Debtor ceased doing work in Georgia in order to do the vacuuming work for PENELEC.

Debtor has approximately thirty (30) employees. Approximately eighty percent (80%) to ninety percent (90%) had been located in Georgia prior to July 12, 1991. All of them were transferred to this district after that date.

Some of debtor's business records are kept in Ohio, some in Georgia, and some in Pennsylvania.

Prior to July 12, 1991, debtor maintained bank accounts in Ohio and Georgia. Since July 12, 1991, the Ohio account has been closed. Its major bank accounts are now located in this district. The status of the account in Georgia is unknown.

Debtor earned $278,402.12 in gross revenues from its various operations during the 180–day period immediately prior to the filing of the bankruptcy petition on September 18, 1991. It earned $3,800.50 in Ohio, all of it in April of 1991. It earned $32,136.00 in Georgia between March and July of 1991. It earned $24,774.00 in New York and $682.50 in Tennessee. It earned $217,789.12—or approximately seventy-eight percent (78%) of its gross revenues—in Pennsylvania. Of that amount, it earned $33,688.00 on the dredging contract with PENELEC and $184,101.12 on the vacuuming contract.

Huntington is the largest of debtor's secured creditors. On November 1, 1991, Huntington brought the above adversary action against debtor seeking to prohibit debtor from using cash collateral, to require debtor to segregate and to account for funds, and return of those funds or for adequate protection.

A hearing was held on Huntington's motions on January 10, 1992. The only witness called by either side to testify was Lawrence Plants.

## II

## ANALYSIS

A. *Venue Under 28 U.S.C. § 1408*

Venue of a case brought under title 11 is governed by the following provision:

> ... [A] case under title 11 may be commenced in the district court for the district—
>
> (1) in which the domicile, residence, principal place of business, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or place of business, in the United States, or principal assets in

the United States, of such person were located in any other district ...

28 U.S.C. § 1408.

The above provision specifies four (4) alternative grounds for venue: domicile; residence; principal place of business; and principal assets.

■ Domicile and residence are not involved in this case. They generally apply to individuals and not to corporations. *In re Suzanne DeLyon, Inc.*, 125 B.R. 863, 866 (Bankr.S.D.N.Y.1991).

It is undisputed that neither debtor's principal place of business nor its principal assets were located in this district for the entire 180–day period immediately prior to the filing of the bankruptcy petition on September 18, 1991.

Also, debtor's principal assets were not located in this district for a greater portion of the 180–day period than they were located in all other relevant districts. All of debtor's operable equipment was dispatched to this district on July 12, 1991— only sixty-seven (67) days prior to September 18, 1991—in order to perform under the vacuuming contract with PENELEC. Debtor's principal assets were located in Georgia for the remaining 113 days of the 180–day period. Between 80% and 90% of debtor's equipment had been in Georgia for approximately eighteen (18) months prior to July 12, 1991.

Debtor does contend however, that venue is proper in this district because it had its principal place of business here for a greater portion of the required 180–day period than in any other district.

■ The standard for ascertaining principal place of business is well-established. Its location, for purposes of 28 U.S.C. § 1408(1), is a question of fact. *In the Matter of Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1241 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980). It is necessary in every instance to consider the character of the corporation, its purposes, and its activities. *In re Dock of the Bay, Inc.*, 24 B.R. 811, 815 (Bankr.E.D.N.Y. 1982). Central to this determination is the

place where the debtor makes its major business decisions, for this constitutes its principal place of business, notwithstanding the physical location of its assets. *Matter of Landmark Capital Co., Inc.*, 19 B.R. 342, 347 (Bankr.S.D.N.Y.1982) (*citing Commonwealth Oil*, 596 F.2d at 1244, 1247).

In addition to having its principal assets in this district for sixty-seven (67) days prior to September 18, 1991, debtor also had its principal place of business here for the same period of time. Although debtor's President resided in Ohio during that time, debtor had terminated all of its operations elsewhere in order to concentrate its efforts on the contract with PENELEC executed on July 12, 1991. It ceased performing on its contract in Georgia and dispatched all of its equipment and employees to this district. Its operations here were supervised by an officer of debtor who shortly thereafter opened an office in Blacklick, Pennsylvania. In addition, it opened bank accounts in this district into which payments from PENELEC were deposited and from which it paid employees and met other obligations.

■ The burden of proving that § 1408(1) has not been satisfied in this case is upon Huntington. *In re Canavos*, 108 B.R. 55, 57 (Bankr.E.D.Pa.1989).

■ Huntington has failed to show, by a preponderance of the evidence, that debtor's principal place of business was *not* located in this district for a longer portion of the required 180–day period than in any other district. That is to say, it has not shown that debtor's principal place of business was located in any other district—in particular in the Northern District of Ohio—for more than sixty-seven (67) days during the 180–day period immediately prior to September 18, 1991.

Although debtor's president resided in Ohio, little or nothing else pertaining to the operation of the business was located there. Moreover, as has been noted, debtor also conducted significant portions of its business in Georgia, New York, and Pennsylvania during that time. Huntington has not convinced this finder of fact that the

major decisions concerning these operations were made in Ohio or in any other single location. To the contrary, it is just as likely that said major decisions of the president were made in the Western District of Pennsylvania as in Ohio or elsewhere.

After July 12, 1991, debtor's operations in this district were controlled by personnel located here. This was done at the insistence of PENELEC, which required that debtor have in this district an officer who was responsible for its operations here. It is just as reasonable to infer from the evidence presented that the operations in Georgia, New York, and Pennsylvania were conducted in the same fashion as it is to infer that they were controlled by personnel located in the Northern District of Ohio or in any other single place.

In this instance we give deference to the selection of the parties. Debtor insists that venue is proper only in this district. Huntington insists that it is proper only in the Northern District of Ohio. Because of this preference, we blend out of the mix other forums which might be even more appropriate than the Western District of Pennsylvania or the Northern District of Ohio. Surely the State of Georgia fits nicely into the statutory and case law analysis; however, no participant favors that decision, even though Georgia is an equally plausible candidate. To the contrary, the parties advised in unison that Georgia would be an inconvenient forum.

On balance, as between only the Western District of Pennsylvania and the Northern District of Ohio, it appears to the court that venue is proper in this district because debtor-in-possession had its principal place of business here for a greater portion of the 180–day period than in any other relevant district.

B. *Transfer Under 28 U.S.C. § 1412*

28 U.S.C. § 1412 provides as follows:

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

■ The following considerations may be relevant in deciding whether to transfer venue of a case:

(1) proximity of creditors of every kind to the court;

(2) proximity of the debtor to the court;

(3) proximity of witnesses necessary to the administration of the estate;

(4) location of assets;

(5) economic administration of the estate; and

(6) necessity for ancillary administration if liquidation should occur.

*Commonwealth Oil,* 596 F.2d at 1247.

■ The burden of proof that a change of venue is warranted is upon Huntington and must be carried by a preponderance of the evidence. *In re Willows Ltd. Partnership,* 87 B.R. 684, 686 (Bankr.S.D.Ala. 1988).

■ It is conceded that a portion of debtor's creditors are located in Ohio. However, a substantial percentage are located in Georgia and elsewhere. Transfer of this case to the Northern District of Ohio would be more convenient to Ohio creditors while less convenient to the others. Counsel to the Committee of Unsecured Creditors responded to the motion by indicating their opposition. In balance, it appears that the present forum is more convenient than any other to the creditors.

It has been determined that debtor's present principal place of business is located in this district. Its presence in this district strongly favors keeping this case here.

The only witness of any significance who is likely to testify in this case is debtor's president, who resides in Ohio but often is employed in the Western District of Pennsylvania. At worst, he is within easy driving distance of this district as he testified that he frequently is here in connection with debtor's business. He would not be greatly inconvenienced by having to testify in this district. To the contrary, he favors this venue, as is evidenced by the decision to file the bankruptcy petition in this district.

The fact that debtor's principal assets are now located in this district clearly favors keeping this case here.

■■■ The most important consideration in deciding whether to transfer venue is where economic administration of a chapter 11 case can best be accomplished. *Commonwealth Oil*, 596 F.2d at 1247. In practical terms, this involves the need to obtain post-petition financing, the need to obtain financing to fund reorganization, and the location of the sources of such financing and the management personnel in charge of obtaining it. *In re International Filter Corp.*, 33 B.R. 952, 956 (Bankr.S.D.N.Y. 1983). Huntington has made no showing that these factors point in the direction of transferring this case to another venue. To the contrary, this factor favors this venue.

Debtor has filed a chapter 11 petition and reasonably anticipates submitting a plan of reorganization in the near future. The anticipated failure of a chapter 11 proceeding is an illogical basis upon which to predicate transfer of a case. *Commonwealth Oil*, 596 F.2d at 1248.

After considering all of these factors, the court concludes that transfer of this case to another venue is not appropriate under 28 U.S.C. § 1412.

### C. *Venue Under 28 U.S.C. § 1409*

Venue of the adversary proceeding brought by Huntington is governed by the following provision:

> ... [A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district in which such case is pending.

28 U.S.C. § 1409(a).

It has been determined that venue of the underlying bankruptcy case is proper in this district and that its transfer to another district would be inappropriate. It therefore follows that venue of the adversary action is also proper in this district. *In re F/S Airlease II, Inc.*, 67 B.R. 428, 431 (Bankr.W.D.Pa.1986).

■■■ The burden of proving that the adversary action should be transferred to another venue is upon Huntington. *In re F/S Airlease II*, 67 B.R. at 432.

■■■ following factors may be relevant when considering whether a change of venue for the adversary action would be appropriate:

(1) location of plaintiff and defendant;
(2) ease of access to necessary proof;
(3) availability of subpoena power for unwilling witnesses;
(4) expense related to obtaining willing witnesses;
(5) enforceability of any judgment rendered;
(6) ability to receive a fair trial;
(7) the state's interest in having local controversies decided within its own borders, by those familiar with its laws; and
(8) economics of estate administration.

*In re F/S Airlease II*, 67 B.R. at 432.

These factors overwhelmingly militate against transferring the above adversary action to another venue.