**In re Fred T. CAMPBELL, Debtor.**

**Bankruptcy No. 98–10556–3F1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 1, 1999.

Robert Altman, Robert Altman, P.A., Palatka, FL, for debtor.

Jonathan L. Hauser, James M. Nolan, Mays & Valentine, L.L.P., Norfolk, Virginia, for FUNB.

Kenneth Meeker, Office of the U.S. Trustee, Orlando, FL, U.S. Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion of First Union National Bank to

Transfer Venue to Eastern District of Virginia (Richmond Division) Pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a) ("Motion") filed on January 21, 1999. (Doc. 18.) After a hearing held on this Motion on June 11–12, 1999, the Court directed each party to submit a memorandum of law, proposed findings of fact and conclusions of law, and a proposed order. Upon review of the evidence and the submissions of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On December 15, 1998 Fred T. Campbell ("Debtor") filed for Chapter 11 bankruptcy relief listing his address as 104 Surf View Drive, Unit 1101, Palm Coast, Florida 32137 ("Palm Coast Condo"). (Doc. 1.) Debtor listed total assets of $5,717,054.26 and total liabilities of $2,900,-626.29, $741,994.49 of which is secured and $2,158,631.80 of which is unsecured. In accordance with Fed.R.Bankr.P. 1007(d), Debtor filed a list of Debtor's creditors holding the twenty largest unsecured claims.

Debtor's list only contained the following four creditors:

| | |
|---|---|
| Discover Card · P.O. Box 15156 Wilmington, DE 19886 | $129.38 |
| Webster Leather Galleries 1202 Ridgewood Ave. Holly Hill, FL 321117(sic) | $2,000.00 |
| Chevy Chase Bank Visa P.O. Box 999 Frederick, MD 21705 | $2,607.99 |
| First Union Nat'l Bank P.O. Box 26944 Richmond, VA 23261–6944 | $2,152,967.00 (listed as contingent, unliquidated, and disputed) |

On January 11, 1999, Webster Leather Galleries, the only unsecured creditor located in Florida, filed a proof of claim for $0.00. Attached to this proof of claim was a check for $566.93 with a memorandum note that Debtor's order was terminated on November 19, 1998. First Union claims to be Debtor's only remaining unsecured creditor and that none of Debtor's secured creditors are located in Florida.

■ Debtor's Schedule B—Personal Property lists assets in the amount of $4,857,054.26. Included in this schedule of assets are two Individual Retirement Accounts ("IRA") that Debtor claims as being fully exempt under Florida Statutes Section 222.21[1], one IRA with Commerce Bank in the amount of $2,813,469.26 and the other with Paine Webber in the amount of $30,264.00.[2]

Debtor listed the Palm Coast Condo as his homestead. The May 27, 1998 Warranty Deed for the Palm Coast Condo is in the name of Debtor's wife, Jane B. Campbell. (FUNB's Ex. 153.) The United States Department of Housing and Urban Development Settlement Statement denotes Jane B. Campbell as the borrower for the Palm Beach Condo and lists her address at 9810 Kingsbridge Road, Richmond, Virginia ("Virginia Home").[3] (FUNB's Ex. 154.) The Virginia Home is listed in Debtor's Schedule A with a value of $460,000.00.

### a. The Indebtedness to FUNB

Debtor's indebtedness to FUNB, Debtor's largest unsecured creditor, arises out of a failed real estate development in the suburbs of Richmond, Virginia for which Debtor personally guaranteed repayment of loans controlled by FUNB. In March of 1998, FUNB initiated foreclosure on real property and brokerage account as-

1. Debtor's IRAs would not be fully exempt in Virginia. Virginia only allows an exemption for a portion of a debtor's Individual Retirement Accounts based on age. *See* Va.Code Ann. § 34–34 (1999); *In re Koons*, 225 B.R. 121 (Bankr.E.D.Va.1998).

2. The value of the Paine Webber IRA claimed exempt is $30,264.00. However, the current market value is listed as $32,283.65.

3. Debtor and Debtor's wife are listed as mortgagors on the May 28, 1998 Mortgage secured by the Palm Coast Condo. (FUNB's Ex. 156.)

sets[4] securing their Loan. The foreclosure sales on the real property occurred on May 29 and July 15, 1998. The deficiency from these sales and Debtor's guarantee of the FUNB Loan provide the bases for FUNB's unsecured claim in this case. FUNB claims that Debtor's receipt of the foreclosure notice on May 4, 1998 motivated Debtor to attempt to be domiciled in Florida and seek the shelter of Florida's liberal exemptions for IRAs.

### b. The Involuntary Bankruptcy Initiated by FUNB

On July 24, 1998, FUNB filed an Involuntary Petition against Debtor under Chapter 7 of the Bankruptcy Code in the Eastern District of Virginia. (FUNB's Ex. 253.) This Involuntary Petition was dismissed on November 19, 1998 for failure to meet the requirements of 11 U.S.C. § 303(b). (FUNB's Ex. 258.)

### c. Debtor's Activities during the Venue Period

During the 180–period preceding filing ("Venue Period"), Debtor filed a Declaration of Domicile in the State of Florida, was issued a Florida driver's license, and transferred his voting rights from the Commonwealth of Virginia to the State of Florida. Debtor testified that he voted in three Florida elections since moving to Florida. Debtor also opened several bank accounts in the State of Florida and organized a corporation under Florida law during this period. On June 4, 1998 a Florida Certificate of Title was issued to Fred T. Campbell, Inc. for a 1998 Dodge automobile which was previously titled in Virginia. On June 29, 1998 Fred T. Campbell, Inc. filed to become a Florida corporation and on June 30, 1998 became a Florida corporation. (FUNB's Ex. 158.) On September 22, 1998 a Florida Certificate of Title was issued to Debtor and Debtor's wife for a 1997 Cadillac automobile which was previously titled in Virginia.

Debtor was physically present in Florida during the majority of the Venue Period,[5] but did travel between Virginia and Florida approximately fifteen times during the Venue Period, primarily by automobile.

During the Venue Period, Debtor maintained his house in Richmond, Virginia[6], which has been his residence since 1974, maintained and utilized his membership at a Richmond country club, and made substantial contributions to the church he and his wife belonged to in Richmond. Debtor continued to use his Virginia physicians and dentist, as well as his certified public accountant and legal counsel. Tax returns made by Debtor during the Venue Period contained Debtor's Virginia address, as did

---

**4.** Debtor and FUNB disputed FUNB's entitlement to these brokerage assets. Scott & Stringfellow, a Richmond-based brokerage company managing these assets, filed an interpleader action bringing these assets into the registry of the Circuit Court of the City of Richmond. This action is still pending, however, Debtor testified that the action concerns approximately $16,000.00.

**5.** FUNB notes that Debtor was physically located in Florida for 79 days from July 13, 1998, the date that Debtor at one point stated was when he really began to take up residence in Florida, to the end of the Venue Period. However, the Venue Period ran from June 18, 1998 to December 14, 1998 and FUNB does not contend that Debtor was physically absent from Florida for a majority of the Venue Period.

**6.** This Court entered an Order Authorizing Employment of Real Estate Broker on March 24, 1999 allowing Edward B. Brophy of Ebb Tide Realty to render professional services in this case. Debtor's memorandum to this Court implies that Mr. Brophy is the realtor responsible for the sale of Debtor's home in Richmond Virginia. (Doc. 78A.) However, Mr. Brophy is located in Jeckyll Island, Georgia and Debtor's Application to Approve Employment of Real Estate Broker only references the sale of Debtor's condominium at Jeckyll Island. (Doc. 32.) The Court did enter an Order Approving Employment of Real Estate Broker on May 10, 1999. (Doc. 56.) This order authorized the employment of Susie Blanton, who is a licensed Virginia realtor. However, Debtor presented no evidence of purchase offers or plans to move their furnishings and personal belongings to Florida.

many other business and financial documents. The address given to most of Debtor's creditors listed the Virginia address. Additionally, Debtor never physically moved furniture and many of his other possessions from his Richmond residence to his Palm Coast Condo.

### d. The Parties' Contentions

Debtor admits that he and his wife have lived a considerable portion of their lives in Virginia, but like many older Americans, Debtor now claims to have made the decision to move to a climate more conducive to his health and lifestyle. Debtor additionally claims to have considered moving to Florida for a number of years and that his health problems motivated him to move to Florida.[7] Debtor blamed the delay in moving on his wife and claimed he would have moved to Florida long ago if it were not for her.

FUNB claims that Debtor's attempted move to Florida was the last of part of Debtor's asset protection scheme and that Debtor's scheme began in the summer of 1997 when he evaded payment of his indebtedness to FUNB.[8] FUNB notes that Debtor did not list his Virginia property for sale until just prior to the hearing on the Motion, indicating that Debtor intends to keep and return to his Richmond home.

FUNB claims that no proper basis for venue exists in the Middle District of Florida and that proper venue exists in the Eastern District of Virginia (Richmond Division). Alternatively, FUNB moves pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014(a) for transfer of this case to the Eastern District of Virginia in the interest of justice or for the convenience of the parties. Debtor opposes both prongs of FUNB's Motion

---

7. Debtor admits that other reasons existed to move to Florida, but claims that the actions of FUNB were only one of his reasons for moving.

8. Also part of this claimed scheme were Debtor's transfer of the bulk of his investment assets into a newly created limited liability

and maintains that proper venue exists in the Middle District of Florida.

### CONCLUSIONS OF LAW

#### a. Jurisdiction.

■ Bankruptcy Courts have jurisdiction over "all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). Proper venue is a core proceeding in a Title 11 case because it "involves fundamental bankruptcy issues, including, in Chapter 11 cases, a determination of whether a requested transfer would promote the economic and efficient administration of the estate." *In re Oceanquest Feeder Service, Inc.*, 56 B.R. 715, 718 (Bankr.D.Conn.1986); *In re Henderson*, 197 B.R. 147, 150 (Bankr. N.D.Ala.1996). Pursuant to 11 U.S.C. § 157(b), this Court may enter an order concerning venue in this case because it is a core proceeding arising in a case *under* Title 11.

#### b. Proper venue lies in the Middle District of Florida.

■ While the evidence before this Court is vast, the issues are narrow. The Court must first decide whether the Middle District of Florida is a proper venue. If venue is proper, the Court may retain or transfer the case. If venue is improper, the Court must transfer or dismiss the case.

Section 1408 of Title 28 of the United States Code provides that:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

partnership, the transfer of Debtor's IRAs to a bank in California, and the subsequent transfer of accounts to an offshore investment vehicle. FUNB claims all of these actions were contemplated and commenced with the intent of evading the claims of FUNB.

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408 (1999).

Federal Rule of Bankruptcy Procedure 1014 provides:

> If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties ...
>
> If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

Fed.R.Bankr.P. 1014 (1999).

■ Proper venue is determined by review of the facts existing during the 180 days prior to the commencement of the case to determine the district of the debtor's residence, domicile, principal place of business, or location of principal assets. *See Micci v. Bank of New Haven (In re Micci)*, 188 B.R. 697 (S.D.Fla.1995) (citing *In re Frame*, 120 B.R. 718 (Bankr. S.D.N.Y.1990)). By providing four alternative bases for proper venue, the statute allows many possible locations where an entity may file for bankruptcy protection. The liberal requirements for proper venue are tempered with the provisions allowing for transfer under certain circumstances.

■ The Supreme Court of Florida distinguished the terms 'residence' and 'domicile' in *Minick v. Minick*, 149 So. 483, 488–89 (Fla.1933) ("Perhaps the interpretation of no words used in legal phraseology has given the courts of this country more labor and difficulty, and has resulted in a greater variety of judicial opinion, than the interpretation of the words 'domicile' and 'residence.'"). A 'residence' may be any dwelling place or abode, temporary or permanent. *Minick*, 149 So. at 487. However, a 'domicile' requires a residence and a permanent intent to remain. A person may have a 'residence', or residences, in one location while having a 'domicile' in another.

■ During the venue period running from June 18, 1998 to December 14, 1998, and even before the venue period, Debtor performed many acts in the state of Florida that included the purchase and use of a condominium located in this district. The evidence presented clearly provides that Debtor's Palm Coast Condo is at a minimum a 'residence'.[9] Debtor was physically

---

**9.** Debtor lists the following to support his claim that he intends Florida to be his permanent residence: (1) filed Declaration of Domicile in Florida on May 11, 1998; (2) changed voting registration from Virginia to Florida in May 1998; (3) obtained Florida driver's license and transferred titles of vehicles to Florida; (4) opened bank accounts in Florida and transferred assets to Florida; (5) formed Florida corporation, Fred T. Campbell, Inc.; (6) BellSouth phone bills showed that Debtor spent majority of Venue Period in Palm Coast, Florida; (7) K–1 statements and 1099 statements received by Debtor were rerouted to Palm Coast address; (8) social security statements rerouted to Palm Coast address; (9) Debtor's medical records and doctors are now in Florida; and (10) Debtor executed a

present in Florida for the majority of the venue period. However, Debtor did more than physically remain in this district for a majority of the venue period. Debtor opened bank accounts, voted in elections, formed a corporation, got a Florida drivers' license and registered vehicles. Whatever Debtor's motive may be, his actions, at a minimum, establish a residence in the state of Florida. The Court need not distinguish whether the Palm Coast Condo is Debtor's 'domicile' or whether Debtor's 'domicile' is in Richmond, Virginia or whether Debtor has any domicile whatsoever. Section 1408 only requires one of the four alternative bases and at a minimum Debtor has established a residence, thus making venue in this district proper.

**c. FUNB failed to meet the burden necessary to transfer venue.**

■■■■ Courts must exercise the power to transfer cases cautiously. *A.R.E. Mfg. Comp. v. D & M Nameplate, Inc. (In re A.R.E. Mfg. Comp.)*, 124 B.R. 912, 914 (Bankr.M.D.Fla.1991); *In re Walter*, 47 B.R. 240, 241 (Bankr.M.D.Fla.1985). In addition to this exercise of caution, FUNB must prove by a preponderance of the evidence that a transfer of this case is in the interest of justice and the convenience of the parties. *In re Blumeyer*, 224 B.R. 218, 221 (Bankr.M.D.Fla.1998) (citing *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1390–91 (2d Cir.1990); *In re Jolly*, 106 B.R. 299 (Bankr.M.D.Fla.1989)).

■■■ The factors to be considered regarding whether to transfer a case pursuant to 28 U.S.C. § 1412 and Federal Rule

of Bankruptcy Procedure 1014(a)(1) are as follows:

(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the debtors to the Court;

(3) The proximity of the witnesses necessary to the administration of the case;

(4) The location of the assets;

(5) The economic administration of the estate;

(6) The necessity for ancillary administration if bankruptcy should result.

*Blumeyer*, 224 B.R. at 220 (citing *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 149 B.R. 365 (Bankr.S.D.N.Y.1993) ("The 'interest of justice' is a broad and flexible standard which contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness.")).

Having determined that venue is proper in Florida, the Court considers Debtor's proximity to the Court to be a factor in favor of retention of this case. FUNB supports its argument for transfer by noting that the loan officers involved with the FUNB Loan are located in Virginia. However, Debtor points out that FUNB has great presence in this district and often appears before this Court.

■■■ FUNB went to great efforts to list witnesses that it claims are necessary to the administration of this estate.[10] While

Change of Address with the U.S. Postal Service.

**10.** FUNB submitted the following non-exclusive list of witnesses that it claims have material knowledge of facts relevant to this case with a brief description of their involvement:

(1) Keith M. Northern, Sr. Vice President, FUNB—a Virginia resident with current responsibility for managing Debtor's credit relationship with FUNB.

(2) John G. Fox, Jr.—Vice President, FUNB—a Virginia resident with previous responsibility for managing Debtor's credit relationship with FUNB.

(3) George E. Moore, III—Former officer for predecessor bank of FUNB—a Virginia resident with previous responsibility for managing the Debtor's credit relationship with FUNB. He had primary responsibility during the 1997 restructure between FUNB, the Debtor and Summerford, Inc.

it is true that travel from Richmond to Jacksonville may not be convenient for potential witnesses, FUNB fails to satisfactorily establish how these persons are necessary to the administration of Debtor's estate. While the Court is concerned for the convenience of witnesses in every case, this factor concerns the proximity of those witnesses necessary for administration of this estate. The Court finds little support for FUNB's argument for transfer in a long list of potential witnesses who may or may not actually participate in the administration of Debtor's estate. Additionally, the Court notes that the potential participation of these parties in this case does not in and of itself mean that the parties are necessary for the administration of Debtor's estate.

FUNB relies on *Micci v. Bank of New Haven (In re Micci)*, 188 B.R. 697 (S.D.Fla.1995) and *In re Blumeyer*, 224 B.R. 218 (Bankr.M.D.Fla.1998) to support its alternative position that venue should be transferred. While both *Micci* and this case concern banks trying to bring debtors into the jurisdiction where the bank is located, FUNB's reliance on *Micci* is misplaced due to great factual differences. In *Micci*, the debtor spent one week of the

Venue period in a Florida condominium located in the district, in which he filed, although the debtor did confess his intent to reside permanently in the Florida condominium. Additionally, the *Micci* debtor practiced law in Connecticut, not in Florida, and a substantial number of his creditors were located in Connecticut. Based on these facts, the Court found that the Southern District of Florida was an improper venue and transferred the case to Connecticut.

In *Blumeyer*, the debtor lived and worked in Missouri. Additionally, the debtor's husband was a debtor in a pending chapter 7 case, earlier converted from chapter 11, being administered in a Missouri bankruptcy court. The Missouri court lifted the automatic stay in her husband's chapter 7 case to allow the creditor moving for transfer of venue to proceed with foreclosure of a condominium in Naples, Florida. The *Blumeyer* debtor filed her chapter 11 petition one day prior to a subsequent foreclosure sale and the bankruptcy court based proper venue on the location of debtor's principal assets. *Blumeyer*, 224 B.R. at 219. Two of eleven of the debtor's unsecured creditors were located in Florida. Six of these unsecured

(4) Alan B. Kirchner—a Virginia resident whose company Cre–Run Enterprises leases an Arabian horse to Debtor and who FUNB claims received an interest in a limited partnership from Debtor.

(5) Phillip B. Hoffman—a Virginia resident, formerly Debtor's partner in Summerford, Inc., and co-partner with Debtor in a Virginia partnership named Courthouse Square Associates.

(6) Phillip W. Blythe, Jr.—a Virginia resident, formerly involved with Summerford, Inc.

(7) Stephen L. Dalton, Esq.—a Virginia resident who represented Debtor in the 1997 loan restructure.

(8) Robert E. Henley, III—a Virginia resident who represented FUNB in the 1997 loan restructure.

(9) Gary S. Cook—a Virginia resident who is Debtor's primary non-bankruptcy attorney and represented Debtor in various matters for over ten years.

(10) David B. Robinson—a Virginia resident who has been Debtor's accountant for five years.

(11) Lynn T. Carney—a Virginia resident who is Debtor's daughter and who FUNB claims has received thousands of dollars from her father for her company, Preferred Insurance Administrators, prior to his filing the instant bankruptcy case.

(12) Joe Cross—a Virginia resident and a partner in Courthouse Square Associates.

(13) Eric D. White—an attorney practicing in Richmond, Virginia and who acted as Trustee in the 1998 foreclosure sales of Summerford.

(14) Steven Fox—an auctioneer in Virginia whose auction company oversaw the foreclosure auction.

FUNB claims that these parties have "substantial highly relevant first hand knowledge of facts important to various aspects of this case" and that Debtor admits that no material witness to any substantive issue in this case is located in Florida. Additionally, FUNB claims that subsequent matters in this case will require participation of these witnesses and that convenience of the witnesses dictates transfer of this case.

obligations were jointly owed with her husband. The transferring bankruptcy court was concerned with the fragmentation and duplication of the administration of the debtor's case in Florida and with the administration of her husband's case in Missouri. *Blumeyer*, 224 B.R. at 221.

While similar in some respects, the crux of this case substantially differs from *Micci* and *Blumeyer*. This Court finds venue in this district is proper and so the issue becomes whether to retain or transfer because venue is proper, rather than whether to dismiss or to transfer because venue is improper as in *Micci*. Unlike both *Micci* and *Blumeyer*, Debtor is not employed in the state where the creditor seeks to transfer venue. There is no companion bankruptcy case in another district as in *Blumeyer*. There are not a substantial number of unsecured creditors located in Richmond, Virginia. There is only one, FUNB, a large bank with a national presence holding the vast majority of unsecured debt listed in this bankruptcy case. FUNB's position does not entitle it to dictate the location of the administration of Debtor's estate.

Debtor does have substantial assets located in Virginia. However, the evidence presented shows that Debtor has many assets in various locations and as FUNB admits many of these assets are liquid, meaning in part that they can be transferred from one location to another.

As far as economic administration of the estate is concerned, there is little concrete evidence before the Court indicating a large difference in the actual cost and the amount of time required to administer this case in the Middle District of Florida versus in the Eastern District of Virginia. FUNB contends that because the source of their claim originated in Richmond and that their potential witnesses are located in Richmond then the economic administration of this case would be best served in Richmond. FUNB supports this contention by noting the Eastern District of Virginia's familiarity with this case due to the involuntary petition. However, FUNB fails to note the great deal of knowledge and familiarity this Court now has after their presentation of evidence in support of their Motion. From the evidence presented, this Court finds little difference in matters of judicial economy between administration in the two districts.

### CONCLUSION

Upon review of the evidence presented and the submissions of the parties, the Court finds that Debtor established that he has a residence in this district satisfying one of the four alternative bases for venue under 28 U.S.C. § 1408. Additionally, taking into account the proximity of the creditors, Debtor, and witnesses necessary to the administration of this estate, as well as the location of the assets and the economic and efficient administration of the estate, the Court finds that FUNB failed to establish that a transfer of this case is in the interest of justice and the convenience of the parties.

A separate order will be entered in accordance with these findings of fact and conclusions of law.