## In re LAND STEWARDS, L.C., et al., Debtors.

### Nos. 02–63377 to 02–63384.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

July 16, 2002.

Paula Beran, Lynn Tavenner, Richmond, VA, for Debtors.

Morton Faller, Rockville, MD, for Creditor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held May 21, 2002, on the motion of Pleasants Investments IV Limited Partnership to dismiss the chapter 11 case of Lands Stewards, L.C., and to transfer venue of the remaining jointly administered cases, or alternatively, to transfer venue of all of these cases, and related filings with respect to the motion.

At the conclusion of hearing the Court ruled from the bench that the motion would be denied. This opinion supplements the court's bench ruling.

### Findings of Fact.

Eaglehead at Lake Linganore is a planned unit real estate development with entitlement for over 5,000 residential dwellings units and commercial space, located on more than 3,700 acres surrounding a private 215–acre lake in Frederick, Maryland. Prior to the filing of this chapter 11 case, the fee title to a significant amount of the undeveloped land at Eaglehead was held by several of the debtors and Frank P. Ellis, IV.

Pleasants Investments IV Limited Partnership is currently the holder of a number of secured notes from several of the debtors and Mr. Ellis. In connection with amounts allegedly due and owing under its notes, Pleasants Investments demanded payment of $9,291,732.60 on or before April 19, 2002.

Recognizing the development potential for Eaglehead, Calvert Development SK Group, L.C. (Calvert SK), a Virginia based developer, conducted due diligence to assess the depth of the financial problems of certain of the debtors. Calvert SK determined that the financial problems could be resolved and sought a method to invest its expertise and resources to provide a turnaround of the project.

Calvert SK created debtor Land Stewards, L.C., on April 10, 2002, to acquire Eaglehead from its existing owners. Land Stewards is based in Richmond, Virginia. Its members are Calvert SK and Ellis, LLC. While Calvert SK and Land Stewards have overlapping equity interests, the ownership of the respective entities is not identical. Ellis, LLC, is a member of Land Stewards but has no ownership interest in Calvert SK.

Shortly after the creation of Land Stewards and immediately before the commencement of these bankruptcy cases, Land Stewards acquired substantially all of the equity interests of affiliated debtors Hamptons, LLC, Eaglehead Corporation, Linganore Development Group, Development Resources, Inc., Linganore Homes, Inc., and Pinehurst Vistas, LLC (collectively, together with Eagle Stream Development Associates, the Affiliate Debtors). Land Stewards is a general partner of Eagle Stream Development Associates. In addition, Land Stewards purchased substantially all of the real property at Eaglehead owned by Mr. Ellis.

In exchange, Land Stewards assumed substantially all of (a) the non-insider indebtedness of the Affiliate Debtors and (b)

Mr. Ellis' debt associated with the Eaglehead project.[1]

Upon purchasing the Eaglehead real property and controlling interests in the Affiliate Debtors, debtor Land Stewards and its principals decided to seek the protections of Bankruptcy Code Chapter 11. Accordingly, on April 18, 2002, debtors commenced their respective reorganization cases by filing in this court voluntary petitions for relief under chapter 11. On April 30, 2002, the court entered an order providing for the joint administration of these chapter 11 cases, and the debtors are operating as debtors-in-possession.

Debtors' employees and their principal legal and business advisors are Virginia residents. Calvert SK's legal and business advisors are located in Richmond, Virginia.

Pursuant to its acquisition agreements, Calvert SK has committed to provide $5,000,000.00 of capital to the debtors. At the time of the hearing on the instant motion, debtors had filed a motion for an order authorizing post-petition debtor-in-possession financing pursuant to 11 U.S.C. § 364 that seeks authority and approval of a $3,000,000.00 post-petition financing facility with Calvert SK.

*Position of Parties.*

In its motion, Pleasants Investments asks the court to (a) dismiss the bankruptcy case of Land Stewards based upon an allegation of bad faith filing under the "new debtor syndrome" and, thereafter, transfer the remaining cases of the Affiliate Debtors to the Bankruptcy Court for the District of Maryland based upon lack of jurisdiction or (b) exercise this court's discretion to transfer all the pending bankruptcy cases to the Bankruptcy Court for the District of Maryland. Pleasants' request for change of venue is based upon its assertion that Virginia had no connection with the Eaglehead project, its principals, or creditors, until April 17, 2002, the day before the petition date. The evidence submitted in support of the Pleasants motion at the hearing was the following documentary evidence:

(a) Articles of Organization dated April 16, 2002 for ELLIS, LLC; (b) Virginia State Corporation Commission inquiry dated April 24, 2002—Land Stewards, L.C.; (c) Virginia State Corporation Commission inquiry dated April 24, 2002—Calvert Development SK Group, L.C.; (d) Lands Stewards, L.C. Sum-

---

1. These transactions are described in a series of documents which were introduced into evidence. The documents include: (a) Letter of Intent and Addendum to LOI; (b) Assumption of Debt Agreement; (c) Closing Agreement; (d) Letter Agreement dated 4/17/02; (e) Consulting Agreement; (f) two Deeds; (g) Membership Interest Assignment Agreement (Pinehurst); (h) Membership Interest Assignment Agreement (Hamptons); (i) Partnership Interest Assignment Agreement (LDG); (j) Partnership Interest Assignment Agreement (Eagle Stream) (without Exhibit A); (k) Stock Assignment Agreement (Eaglehead); (*l*) Stock Assignment Agreement (LHI); (m) Stock Assignment Agreement (DRI) (without Exhibit A); (n) Trademark Assignment (Pinehurst); (*o*) Trademark Assignment (Hamptons); (p) Trademark Assignment (Eagle Stream); (q) Trademark Assignment (LHI); (r) Trademark

Assignment (Eaglehead); (s) Trademark Assignment (LDG); (t) Trademark Assignment (DRI); (u) Pledge and Security Agreement; (v) Purchase Money Deed of Trust and Security Agreement (Land Stewards); (w) Guaranty Agreement (Hamptons); (x) Guaranty Agreement (Pinehurst); (y) Guaranty Agreement (LDG); (z) Guaranty Agreement (LHI); (aa) Indemnity Deed of Trust and Security Agreement (Pinehurst); (bb) Indemnity Deed of Trust and Security Agreement (LDG); (cc) Indemnity Deed of Trust and Security Agreement (LHI); (dd) Indemnity Deed of Trust and Security Agreement (Hamptons); (ee) Guaranty Fee Agreement (LHI); (ff) Guaranty Fee Agreement (LDG); (gg) Guaranty Fee Agreement (Pinehurst); (hh) Guaranty Fee Agreement (Hamptons); and (ii) Operating Agreement of Land Stewards, L.C. (collectively, the "Transaction Documents").

mary of Schedules, Schedules A–H, Statement of Financial Affairs; and (e) Land Stewards, L.C.—First Day papers (Voluntary Petition, Exhibit A to Voluntary Petition, List of Creditors Holding 20 Largest Unsecured Claims, List of Equity Security Holders, Declaration of Divisional Venue, Land Stewards, L.C.'s Consent of Majority of Class A Common Units dated April 17, 2002, Land Stewards, L.C.'s Consent of Sole Holder of Class B Common Units dated April 17, 2002, Calvert Development SK Group, L.C., Consent of All Holders of Membership Interests dated April 17, 2002).

In opposition to the motion, debtors' position is that Pleasants failed to demonstrate (a) that the Land Stewards' case was filed with the requisite subjective bad faith or (b) that any plan for reorganization is objectively futile. In addition, debtors assert, the facts and circumstances of these cases do not justify a venue transfer to the District of Maryland.

*Discussion and Conclusions of Law.*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## I. The Court Finds That Dismissal of the Land Stewards Case is Neither Warranted Nor Justified.

■ Pleasants' dismissal argument is without merit. It has failed to demonstrate either (a) that the Land Stewards' case was filed with the requisite subjective bad faith or (b) that any plan for reorganization is objectively futile. Accordingly, under the standards prescribed by the United States Court of Appeals for the Fourth Circuit in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir.1989), the relief requested in the motion must be denied. As the Fourth Circuit stated: "a stringent test is necessary to accommodate the vari-

ous and conflicting interests of debtors, creditors, and the courts...." 886 F.2d at 701.

### A. *Subjective Bad Faith.*

■ Pleasants asserts that "this is a classic example of 'new debtor syndrome'" which demonstrates the subjective bad faith of Land Stewards. Mot. to Dismiss Case of Land Stewards, L.C., at ¶ 20. In support, Pleasants claims subjective bad faith is established because Land Stewards was formed "on the eve of bankruptcy with the sole business purpose of immediately filing for bankruptcy protection after first entering into a series of presently undisclosed transactions...." Mot. to Dismiss, at ¶ 20. The mere fact that a newly created entity has sought the protection of chapter 11 does "not suffice to establish the subjective lack of good faith that is a prerequisite to summary dismissal." *Carolin*, 886 F.2d at 704. In fact, the Fourth Circuit held that the Bankruptcy Code manifestly sanctions, if not encourages, transactions like the Land Stewards' transactions. Specifically, the Fourth Circuit stated:

By providing for interim emergency relief, including an automatic stay of creditor self-help efforts, the bankruptcy code manifestly sanctions—indeed encourages—not only the eleventh-hour invocation of its protection, but the last minute appearance of new management armed with fresh capital. "It is quite common and not inappropriate for a debtor to use chapter 11 to obtain a respite from a creditor or creditors aggressively seeking to collect on a debt, even when execution is imminent ...." (citations omitted) In such circumstances, a last ditch attempt to forestall imminent financial collapse would obviously *further* the purposes of Chapter 11 if it ultimately facilitated the emergence

of new investors offering an "infusion of capital" and previously unavailable "management expertise."

*Carolin,* 886 F.2d at 703–04 (citing *In re McStay,* 82 B.R. 763, 768 (Bankr.E.D.Pa. 1988) and *Meadowbrook Investors' Group v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.),* 30 B.R. 503, 505 (9th Cir. BAP 1983)).

Calvert SK created Land Stewards as the vehicle to salvage the Eaglehead project. Evidence at hearing suggests that Land Stewards has the financial resources and business expertise to complete the development. This is the type of situation envisioned by the Fourth Circuit in *Carolin.*

A review of the transaction documents and the circumstances surrounding these cases do not demonstrate that the cases were filed in bad faith. Debtors assert, and the court finds, that they filed the bankruptcy cases to preserve the value of the debtors' assets for the benefit of all creditors.

B. *Objective Futility of Reorganization.*

In addition to failing to establish subjective bad faith, Pleasants also fails on the objective element of the Fourth Circuit's test. Pleasants did not present any evidence which demonstrates that a plan for reorganization of Land Stewards is objectively futile as required under *Carolin.*

In fact, the court heard evidence at hearing suggesting the likelihood that debtors may achieve a reorganization within in a reasonable time.

▌ The value of a debtor's assets is a principal component of determining objective futility. *See In re Dunes Hotel Assocs.,* 188 B.R. 162, 169–71 (Bankr.D.S.C. 1995). Debtors presented undisputed evidence that the value of Debtors' assets was

more than $34,000,000.00 and that total non-insider indebtedness is approximately $15,158,000.00.

In summary, Pleasants has failed to demonstrate that this case was filed in subjective bad faith or that any plan for reorganization is objectively futile. Accordingly, there is no basis or justification to dismiss these cases.

## II. The Court Finds No Basis For A Transfer of Venue.

▌ In its motion, Pleasants also seeks to change the venue of these cases to the District of Maryland. Pleasants has the burden of proof on this motion by a preponderance of the evidence. *See In re Campbell,* 242 B.R. 740, 746 (Bankr. M.D.Fla.1999); *In re Blumeyer,* 224 B.R. 218, 221 (Bankr.M.D.Fla.1998) (citing *In re Manville Forest Prods. Corp.,* 896 F.2d 1384, 1390–91 (2d Cir.1990); *In re Jolly,* 106 B.R. 299 (Bankr.M.D.Fla.1989)). Furthermore, in cases such as these where the existing venue is entirely appropriate, this Court exercises its power to transfer cases cautiously. *In re Enron Corp.,* 274 B.R. 327, 342 (Bankr.S.D.N.Y.2002); *In re Campbell,* 242 B.R. at 746; *A.R.E. Mfg. Co., Inc. v. D & M Nameplate, Inc. (In re A.R.E. Mfg. Co., Inc.),* 124 B.R. 912, 914 (Bankr.M.D.Fla.1991); *In re Walter,* 47 B.R. 240, 241 (Bankr.M.D.Fla.1985).

▌ In considering whether to transfer these cases, the factors to be considered are:

a. The proximity of creditors of every kind to the Court;

b. The proximity of the debtor to the Court;

c. The proximity of the witnesses necessary to the administration of the estate;

d. The location of the assets;

e. The economic administration of the estate; and

f. The necessity for ancillary administration if bankruptcy (liquidation) should result.

*See In re Commonwealth Oil Ref. Co.,* 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980).

A. *Economic Administration of the Estate Supports the Current Venue.*

■■■ The most important consideration in deciding whether to transfer venue of these cases is where economic administration of a chapter 11 case can best be accomplished. *See In re Enron Corp.,* 274 B.R. at 348; *In re Commonwealth Oil Ref. Co.,* 596 F.2d at 1247; *In re Int'l Filter Corp.,* 33 B.R. 952, 956 (Bankr.S.D.N.Y. 1983). While Pleasants asserts in its motion that the economic administration of these cases would benefit from a transfer to Maryland, it presented no evidence in support of this position.

The economic administration of a bankruptcy estate involves "the need to obtain post-petition financing, the need to obtain financing to fund reorganization, and the location of the sources of such financing and the management personnel in charge of obtaining it." *Huntington Nat'l Bank v. Indus. Pollution Control, Inc. (In re Indus. Pollution Control, Inc.),* 137 B.R. 176, 182 (Bankr.W.D.Pa.1992); *see also In re Int'l Filter Corp.,* 33 B.R. at 956; *In re Enron Corp.,* 274 B.R. at 348; *In re Garden Manor Assocs., L.P.,* 99 B.R. 551, 554–55 (Bankr.S.D.N.Y.1988) (court denied motion to transfer even when sole asset was located in another jurisdiction because ability to raise capital, renegotiate loan terms and likely sources of capital were located in current venue).

Land Stewards, a Virginia entity, and its majority member Calvert SK, a Virginia entity, have committed to obtain over $5,000,000.00 to fund debtors' reorganization. Furthermore, debtors have filed a DIP financing motion, seeking the authority to obtain post-petition financing from Calvert SK in an amount not to exceed $3,000,000.00.

The personnel in charge of obtaining and funding the financing are all in Virginia. Calvert SK is represented by Richmond counsel. Robert C. Wilcox, the debtors' designee and manager of the Land Stewards, and his business professionals and advisors are Virginia residents. All of debtors' employees are Virginia residents. The ability to raise capital, renegotiate loan terms and likely sources of capital are all Virginia based, and, accordingly, Virginia is the more appropriate venue. *In re Garden Manor Assocs.,* 99 B.R. at 555; *see also In re Enron Corp.,* 274 B.R. at 348.

The preponderance of the evidence does not demonstrate that the economic administration of these estates is better in Maryland. In fact, the evidence suggests that the economic administration of these cases is better in Virginia.

B. *Proximity of Creditors of Every Kind Supports Current Venue.*

Debtors concede that most of the creditors are located in Maryland, a fact not determinative that the cases should be transferred to Maryland. *See In re Indus. Pollution Control Inc.,* 137 B.R. at 181. A significant percentage of creditors are located elsewhere. For example, seven out of twenty of the largest unsecured creditors are located outside of Maryland. No creditor other than Pleasants has expressed a concern over the Virginia venue. In fact a number of creditors have expressed a desire for these cases to proceed in Virginia, and the court heard testimony from several of them.

Accordingly, Pleasants has failed to establish by a preponderance of the evidence that the proximity of creditors of every kind to the Maryland bankruptcy courts justifies transfer of these pending chapter 11 cases to Maryland.

### C. *Proximity of the Debtors to the Court Supports the Current Venue.*

Debtor Land Stewards, a Virginia entity, submitted evidence that it possesses the necessary financial resources and the business expertise to develop the real property at Eaglehead. Robert C. Wilcox, a Virginia resident, is the designee of all the debtors. He has over 30 years experience developing large residential and commercial projects in Virginia and elsewhere. All of debtors' employees are Virginia residents. While the Affiliate Debtors are Maryland entities, (a) they have no employees other than Virginia residents, and (b) they have been unable to obtain the necessary financial resources to develop the property at Eaglehead.

Pleasants failed to establish by a preponderance of the evidence that the proximity of the debtors to this court justifies the transfer of these pending chapter 11 cases to Maryland.

### D. *Proximity of Witnesses Necessary for the Administration of the Estates Supports the Current Venue.*

The witnesses who are likely to testify in these cases in connection with the administration of these estates are Robert C. Wilcox, who resides in Virginia, and debtors' consultant Frank P. Ellis, IV, who resides in Alabama and Maryland. At worst, Mr. Ellis is within an easy driving distance of this district, and he would not be greatly inconvenienced by having to testify in this district. These facts demonstrate that Virginia is the more appropriate venue.

*See In re Industrial Pollution Control Inc.,* 137 B.R. at 181.

██ Pleasants claims that its representatives will be witnesses in these proceedings. They may or may not. However, a mere shift of inconvenience from one party to another will not suffice for a change of venue pursuant to 28 U.S.C. § 1412. Russell, *Bankruptcy Evidence Manual,* 2002 Ed., § 301.33. In addition, given the close proximity of Maryland to Virginia, the court determines that Pleasants will not be greatly inconvenienced by the Virginia venue. *See In re Indus. Pollution Control, Inc.,* 137 B.R. at 181.

### E. *Location of Assets Does Not By Itself Justify a Change of Venue.*

Debtors concede that all of their real property is located in Maryland, and, if liquidation should result, the real property to be liquidated is in Maryland. However, given the goal of rehabilitation, this is not an important factor here and should not be the basis for the transfer of venue of these chapter 11 cases. *See In re Commonwealth Oil Ref. Co.,* 596 F.2d 1239, 1248 (5th Cir.1979) (holding that the location of the assets is not as important where the ultimate goal is rehabilitation rather than liquidation).

In the Court's opinion, a change of venue to Maryland is not warranted.

### *Conclusion*

Pleasants has failed to demonstrate that: (a) these cases were filed with the requisite subjective bad faith, (b) any plan for reorganization is objectively futile, or (c) a change of venue is in the interest of justice or for the convenience of all parties.

Accordingly, for these reasons and the reasons stated from the bench on May 21,

2002, the court will enter an order denying the motion.